# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ABEL JIMENEZ JIMENEZ,<br><br>Petitioner,<br><br>vs.<br><br>SAMUEL J. OLSON, et al.,<br><br>Respondents. | No. 25-CV-189-CJW-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

_____

Petitioner Abel Jimenez Jimenez's Petition for Writ of Habeas Corpus, (Doc. 1), and Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, (Doc. 2), are before the Court. For the following reasons, the Court **grants** petitioner's petition for writ of habeas corpus and orders that he be allowed to post bond under the terms of the immigration judge's August 1, 2025 bond order. The Court **denies as moot** petitioner's requests for a TRO, preliminary injunction, and order to show cause. The Court **denies** the declaratory relief requested.

## I.  PROCEDURAL BACKGROUND

Petitioner is a citizen of Mexico. (Doc. 1-4, at 3). He arrived in the United States without being admitted or paroled at some time prior to November 2003. (Doc. 1, at 11 & 20; Doc. 1-5, at 1, 4; Doc. 10, at 3; Doc. 13-8 (alleging that petitioner was arrested in San Luis, Arizona on October 31, 2003)). On June 12, 2025, Immigration and Customs Enforcement ("ICE") served petitioner with a Notice to Appear in Removal Proceedings ("NTA"), asserting he was subject to removal as an alien[1] unlawfully present

---

[1] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

in the United States. (*Id.*, at 1); (Doc. 13-2); *see* 8 U.S.C. § 1182(a)(6)(A)(i)("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). On July 9, 2025, an immigration judge set his bond at $4,000. (Doc. 1-1). The next day, petitioner posted bond. (Doc. 1-4).[2] However, at the same time, Immigration and Customs Enforcement ("ICE") appealed that bond determination to the Board of Immigration Appeals ("BIA"), automatically staying the immigration judge's bond decision and the posting of bond. (Doc. 1-2; Doc. 13-4); s*ee* 8 C.F.R. § 1003.19(i)(2) (automatic stay following filing of a notice of intent to appeal by DHS). In its appeal, ICE asserted that petitioner "is subject to detention under [8 U.S.C. § 1226(c)] and may not be released from custody[.]" (Doc. 13-4, at 2). The Office of the Principal Legal Advisor found that the evidentiary record in petitioner's case "may be premised on the alien being subject to mandatory detention pursuant to . . . 8 U.S.C. § 1226(c)." (Doc. 1-3). On August 1, 2025, the immigration judge redetermined bond and set it at $3,000. (Doc 1-5, at 4).

On September 5, 2025, the BIA issue its decision in *Matter of Yajure Hurtado*, finding that "under a plain language reading of . . . 8 U.S.C. § 1225(b)(2)(A), [i]mmigration [j]udges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." 29 I&N Dec. 216, 225 (BIA 2025)). The BIA so held because it determined that those "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228.

---

[2] Petitioner has not provided any documentation on what happened with that bond, including whether it was returned to the obligor. *See* (Doc. 1-4 (documentation of bond acceptance).

On October 24, 2025, petitioner filed the instant petition for habeas corpus relief, (Doc. 1), and motion for a TRO and preliminary injunction, (Doc. 2), with this Court. Petitioner also provided the Court with Exhibits 1, 2, 3, 4, and 5. (Docs. 1-1 through 1-5).

On October 28, 2025, the immigration court found petitioner inadmissible under Title 8, United States Code, Section 1182(a)(6)(A)(i), denied cancellation of removal, and granted him voluntary departure, ordering that he depart the United States by December 29, 2025. (Doc. 13-6); *see* 8 U.S.C. § 1229b (cancellation of removal); 8 U.S.C. § 1229c (voluntary departure); (Doc. 14, at 2).

On October 31, 2025, the BIA issued its decision in petitioner's appeal, affirming ICE's appeal and finding that "the [i]mmigration [j]udge lacked the authority to hear [petitioner's] request for a bond redetermination as [petitioner] is an applicant for admission and is subjection to mandatory detention under . . . 8 U.S.C. § 1225(b)(2)(A)." (Doc 13-7, at 1). The issuance of the appeal decision lifted the automatic stay, and vacated the July 9, 2025 bond order. (*Id.*, at 2).

On November 3, 2025, the Court entered an initial review order, ordering respondents to respond or file a dispositive motion within fourteen days and allowing petitioner to reply to respondents' filing, if any, five days after that. (Doc. 7). On November 17, 2025, respondents Pamela Bondi, Todd Lyons, Kristi Noem, and Samuel Olson filed a response, (Doc. 12), and provided the Court with Exhibits A, B,[3] C, D, E,

---

[3] Exhibits A and B appear to the Court to both be the same document.

F, and G. (Docs. 13-2 through 13-8).[4]  On November 24, 2025, petitioner filed a reply. (Doc. 14).  Petitioner remains in ICE custody at the Linn County Jail.[5]

### III.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention."  *Munaf v. Green*, 553 U.S. 674, 693 (2008).  Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention."  *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).  Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful.  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### IV.    DISCUSSION[6]

Petitioner argues that his detention violates the plain language of federal law, as "[r]espondents' new legal interpretation is plainly contrary to the statutory framework[.]"

---

[4] As of writing, respondents Brian Gardner and Dave Beuter have not filed a response.

[5] It appears that petitioner was previously in custody at the Douglas County Jail in Omaha, Nebraska, and challenged his detention there through a habeas corpus proceeding in the District Court in and for Nebraska.  *See Jimenez v. Olson*, No. 8:25CV533, 2025 WL 2624388 (D. Neb. Sept. 11, 2025).  Neither party has questioned this Court's jurisdiction over this matter at present, and neither does the Court, given that petitioner is now detained in the Northern District of Iowa. *See* (Doc. 2-1, at 14 ("Petitioner is detained in Linn County Correctional Center[.]"); Doc. 10, at 5).

[6] Substantial portions of this analysis are taken from an order drafted by my colleague, the Honorable Leonard T. Strand, in *Giron Reyes v. Lyons*, No. C25-4048-LTS-MAR, 1225 WL 2712427 (N.D. Iowa Sept. 23, 2025).  The Court has conducted its own legal analysis, but

(Doc. 1, at 8, 14 ("alleging that categorizing petitioner as statutorily ineligible for bond is a violation of federal law"), 23–24). He asks the Court to order his release under Title 28, United States Code, Section 2241 and Title 8, United States Code, Section 1226(a) immediately upon payment and under the terms of the immigration judge's August 1, 2025 bond order. (*Id.*, at 8–9, 34; Doc. 14, at 6).

Respondents claim that petitioner is not entitled to release on bond as he is an applicant for admission and thus his detention is mandatory under Title 8, United States Code, Section 1225(b)(2). (Doc. 10, at 7). Petitioner responded, arguing that "[r]espondents have proffered an interpretation of [S]ection 1225 that interprets 'applicants for admission' as synonymous with 'seeking admission.' Respondents' interpretation is inconsistent with the Supreme Court's reading of [S]ections 1225 and 1226." (Doc. 14, at 2).

As a preliminary matter, the Court finds that any claims related to the automatic stay are moot, and the Court does not address them further. *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (explaining that an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). The automatic stay is no longer in effect following the BIA's decision in ICE's appeal. (Doc 13-7). Thus, setting aside the issue of the automatic stay and arguments made by the parties on that issue, the Court begins with the relevant statutes.

### A. Title 8, United States Code, Sections 1225 and 1226

This case is not the first challenge to the application of these statutes that the Court has addressed. *See Ramirez-Ramirez v. Beuter*, No. 25-CV-185, 2025 WL 3499057 (N.D. Iowa Dec. 5, 2025); *Lopez Lopez v. Sheehan*, No. 25-CV-4052, 2025 WL

---

reached the same conclusions as Judge Strand for the same reasons and found his analysis sound. For that reason, the Court has largely adopted it here. The Court notes that Judge Strand reaffirmed his analysis in a later decision as well. *See Garcia Picazo v. Sheehan*, No. C25-4057-LTS-MAR, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025).

3046183 (N.D. Iowa Oct. 30, 2025).[7]  This case, like the previous one before the Court, tests the interplay between two immigration statutes.  Section 1225 covers "applicants for admission"; defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]"  8 U.S.C. § 1225(a)(1).  These applicants must undergo an inspection by an immigration officer to ensure their admissibility into the United States.  8 U.S.C. § 1225(a)(3); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  If they are found to be unlawful entrants, they are split into two categories.

If the alien is inadmissible due to fraud or willful misrepresentations, lacks necessary documentation or fits a designation by the Attorney General without having been continuously present in the United States for the past two years, then the alien may be summarily removed (excepting asylum or persecution claims).  8 U.S.C. § 1225(b)(1)(A) (citing *id.* § 1182(a)(6)(C), (a)(7)).  An alien who does not fit those categories is still detained pending a removal proceeding.  *Id.* § 1225(b)(2)(A) (citing *id.* § 1229a).  Either way, Section 1225 does not anticipate the release of an applicant for admission pending a removal decision.  *Cf. Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal.  *Id.* at 288.  As the Supreme Court explained:

> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States."  § 1226(a).  "Except as provided in subsection (c) of this section," the Attorney General

---

[7] This case is likewise by no means the first of this challenge nationwide, and the Court acknowledges that there have been, in fact, "over 50 district court decisions in the last 6 months across the country" on this issue.  *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 3288354, at *7 (S.D.N.Y. Nov. 25, 2025); *accord id.* at *7 n.6 (citing all fifty district court decisions).

> "may release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole." *Ibid*.
>
> Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid*.
>
> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 288–89 (footnote omitted).

Federal regulations detail the bond procedure. First, Department of Homeland Security (DHS) officials make an initial custody determination. 8 C.F.R. § 236.1(c)(8). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also id*. § 1003.19. At that time the alien may be released upon a showing by clear and convincing evidence that the alien is not a danger to the community or a flight risk and a posting of bond. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3).

Thus, although aliens detained under Section 1225(b) are not entitled to a bond hearing, detainees under Section 1226(a) are entitled to a bond hearing (subject to exceptions at Section 1226(c), inapplicable here). Respondents contend that petitioner is an applicant for admission who, under Section 1225(b)(2), cannot be released pending his removal proceedings. (Doc. 10, at 6–8). Petitioner resists being categorized as an

applicant for admission and contends that the government must abide by the procedures under Section 1226(a), thus entitling him to a bond hearing, which already took place on August 1, 2025. (Doc. 1, at 8; Doc. 1-5). Petitioner emphasizes that in the immigration judge's second bond decision bond was set at $3,000 and that the Court should order petitioner's "immediate release upon payment of the $3,000 bond set by the immigration judge." (Doc. 14, at 6).

### B.     *Application of Appropriate Statute to Petitioner*

The key question is which statute appropriately applies to petitioner here, Section 1225(b) or 1226(a). Petitioner argues that as he falls within the category of noncitizens contemplated by Section 1226(a), the government's denial of his ability to post bond violates federal law and his substantive and procedural due process rights. (Doc. 1). Respondents claim that he falls under both Section 1226(a) and Section 1225(b)(2), and thus his continued detention without the ability to post bond is lawful, as the government may choose which statute to invoke. (Doc. 12, at 12 n.5 (arguing that petitioner "is *both* an 'applicant for admission' and is 'seeking admission' and therefore subject to mandatory detention (emphasis in original)).

The Court can end its analysis at petitioner's federal law argument. In conducting its analysis on that issue, the Court begins with the plain language of the statutes. Courts should "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). For that reason, the Court "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *accord Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021) (stating that a court must "begin with the text"). Where statutory language is unambiguous and "the statutory scheme is coherent and consistent," the Court must end its inquiry there. *United States v. Ron Pair Enterprises, Inc.*, 489

U.S. 235, 240 (1989). This is so even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). It is also so despite an agency's interpretation to the contrary. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

> Regarding the statutory framework at issue here, Section 1225(a)(1) states:
>
> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

The term "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Thus, respondents argue that any alien who illegally entered the United States without having been inspected by an immigration officer is an applicant for admission. (Doc. 10, at 6–7). That reading is broad, but intuitive as no qualifiers limit the scope on timing or entry grounds. Under this interpretation, because petitioner admits having entered the United States without inspection, he would be an applicant for admission. And because Section 1225(b)(2) is the "catchall provision that applies to all applicants for admission," *Jennings*, 583 U.S. at 287, respondents contends that it must apply to petitioner. (Doc. 10, at 7).

On the other hand, even statutory language that is unambiguous in isolation must be read in context. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality); *Pulsifer v. United States*, 601 U.S. 124, 133 (2024). The context clues present here point against petitioner's classification as an applicant for admission. Like Judge Strand, the Court finds the analysis in *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025), to be particularly persuasive on this point. Considering Section 1225 alongside its Section 1226 companion demonstrates that the

most natural interpretation of Section 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. *Id.* at *5. Section 1225 repeatedly refers to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B), reflecting that Congress envisioned applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225(a), focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, Section 1225 is set up with arriving aliens in mind.

Compare that to Section 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering Section 1225 in its entirety, and in relation to Section 1226, reveals that Section 1225 is more limited than what that plain text of Section 1225(a)(1) might indicate when construed in the abstract. The Court does not find, as respondents contend, that both Sections 1225 and 1226 apply to aliens like petitioner and that the government then can choose under which section it wishes to proceed. Nothing in the statutory construction of those sections would suggest that type of statutory scheme.

Moreover, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009); *see also United States v. Castleman*, 572 U.S. 157, 178, (2014) (Scalia, J., concurring in part and concurring in the judgment) (explaining that the "presumption against ineffectiveness" means "that Congress presumably does

10

not enact useless laws"). Adopting respondents' reading would be to find recent congressional enactments superfluous. Congress passed the Laken Riley Act to amend Section 1226(c) and include more classes of aliens who are ineligible for bond under Section 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A), (6)(C), and (7)). Under respondents' expansive interpretation of Section 1225, that amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Thus, the respondents' reading allowing the government to choose which statute applies cannot be correct as it also makes parts of the statute superfluous.[8]

Therefore, the Court concludes that petitioner does not meet the criteria to fall under Section 1225(b)(2) but rather falls under Section 1226(a), which permits release on bond. Although the Court recognizes that the BIA reached the opposite conclusion in *Yajure Hurtado*, the Court is not bound by that decision and declines to follow it. *Loper Bright Enters.*, 603 U.S. at 386. Petitioner's continued detention without the ability to post bond is unlawful, and the Court orders that the original bond order from August 1, 2025, is reinstated. The Court does not order petitioner's immediate release from custody, as doing so without requiring the posting of bond would override the

---

[8] Likewise, although respondents contend that Congress could not have intended to treat those who enter and remain in the country without status more favorably than those apprehended at the border, (Doc. 10, at 18), "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas*, 533 U.S. at 693). Thus, it is not that Congress treats those within the country more favorably, but that the protections afforded under due process do.

11

immigration judge's determination that bond was necessary. *See Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *7 (S.D. Iowa Sept. 30, 2025) (finding that "the better exercise of discretion is for this Court to . . . [not] assume for itself the role of 'Immigration Judge' by deciding bond or detention in the first instance."); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *8 (N.D. Ill. Oct. 16, 2025) (ordering a individualized custody redetermination hearing rather than immediate release as detention is discretionary under Section 1226(a)). Because the Court finds that petitioner prevails on his federal law argument, it does not address his substantive or procedural due process arguments. (Doc. 1, at 27–28, 32–34; Doc. 2-1, at 17–22; Doc. 14, at 5–6).

## V.   CONCLUSION

For the reasons set forth herein, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted** to the extent that petitioner is seeking the ability to post bond under the terms of the August 1, 2025 bond order. The Court hereby orders that within fourteen days of the date of this order respondents permit petitioner to post bond, and upon him doing so, release him from custody in accordance with the conditions previously imposed in the August 1, 2025 bond order. Petitioner's requests for a TRO, preliminary injunction, and order of show cause (Doc. 2) are **denied as moot**.[9]

---

[9] The Court notes that petitioner requested attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in passing without briefing or documentation supporting the amount requested. (Doc. 1, at 35). Respondents did not respond to petitioner's request. To be eligible for attorney's fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). If petitioner wishes to pursue this claim further, petitioner must file a timely motion which is fully supported by a brief and documentation.

Petitioner's request for declaratory relief is **denied**, as the Court has already declared its ruling here, and doing so again through declaratory relief is unnecessary.

**IT IS SO ORDERED** this 15th day of December, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa